Jared W. Moss (10721)
PIA ANDERSON MOSS HOYT, LLC
1526 West Ute Boulevard, Suite 206
Park City, UT 84098
(801) 350-9000
jmoss@pamhlaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| BLOCKCHAIN SOFTWARE SERVICES, LLC, a Utah limited liability company; and CONNECTWARE, LLC, a Utah limited liability company;<br><br>Plaintiffs,<br><br>-vs-<br><br>JOFF PARADISE, an individual; AI TRADES; PAM ALFORD, an individual; ANTHONY TORRESO; an individual; and DOES 1-10<br><br>Defendants. | **COMPLAINT**<br><br>Case No: 2:19-cv-00239-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiff Blockchain Software Services, LLC ("***BSS***") and Connectware, LLC ("***Connectware***") complain against Mr. Joff Paradise, AI Trades, Ms. Pam Alford, and Mr. Anthony Torreso (collectively "***Defendants***") and allege as follows:

**PARTIES**

1. Blockchain Software Services, LLC is a Utah limited liability company.

2. Connectware, LLC is a Utah limited liability company.

3. Upon information and belief, Mr. Paradise is an individual residing in Kiev, Ukraine with regular contacts and business in Utah.

4.      Upon information and belief, AI Trades is a business wholly-owned by Mr. Paradise and regularly conducts business in Utah.

5.      Upon information and belief, Ms. Alford is an individual residing in St. Louis, Missouri with regular contacts and business in Utah.

6.      Upon information and belief, Mr. Torreso is an individual residing in Las Vegas, Nevada with regular contacts and business in Utah.

## JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's claims based on the federal trade secret claim pursuant to 18 U.S.C. §§ 1836-1839 *et seq.* and 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

8.      A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this Judicial District.  Venue therefore lies in the United States District for the District of Utah.

## FACTUAL BACKGROUND

9.      On or about August 1, 2018, Connectware and AI Trades entered into a Software License and Service Agreement ("***Software Agreement***").  Under this Software Agreement, Connectware provided software license to AI Trades in exchange for payment from AI Trades for a one-time activation fee and monthly service fee due on the 1st day of each month.

10.     Since on or about November 1, 2018, AI trades breached the terms of the Software Agreement and has not paid the monthly service fees.

11. Despite demands by Connectware, AI Trades has not paid the total amount outstanding of 17.430680010471 BTC ($69,250 USD).

12. On February 6, 2019, BSS and AI Trades entered into a White Label License Agreement ("***White Label Agreement***").

13. Under the White Label Agreement, BSS agreed to develop and license to AI Trades proprietary software and products related to certain technologies, website features, and other proprietary source code, software, and products (collectively, "***Trade Secrets***") in exchange for monthly license fee payments.

14. The White Label Agreement prohibits AI Trades from disclosing the Confidential Information provided to it (which includes the Trade Secrets) or allowing any other person to use the Trade Secrets.

15. On information and belief, AI Trades contracted with third-parties, including Ms. Alford and Mr. Torreso, to perform IT support and other business services. Neither Ms. Alford or Mr. Torreso were authorized to access or use the Trade Secrets.

16. During the development of the Trade Secrets, AI Trades was given limited access to the Trade Secrets under the constraints set forth in the White Label Agreement, including an obligation to keep the Trade Secrets confidential with specific prohibitions that AI Trades and any other person shall not (i) decompile, reverse engineer, or attempt to obtain the Trade Secrets, (ii) sublicense or allow any other person to use the Trade Secrets, (iii) use the Trade Secrets for any other purpose than the operation of the AI Trades business.

17. On or about March 11, 2019, BSS completed the customization of its Trade Secrets in accordance with the specifications provided by AI Trades.

18. On March 12, 2019, BSS discovered that an unauthorized third-party had accessed some or all of the Trade Secrets on March 7, 2019 and downloaded the Trade Secrets.

19. On information and belief, this unauthorized access and download of some or all of the Trade Secrets was performed by Ms. Alford and Mr. Torreso at the direction of or with the assistance of Mr. Paradise and AI Trades.

20. BSS immediately informed Mr. Paradise and AI Trades of the unauthorized access of the Trade Secrets and proprietary information and discussed the issue with AI Trades, Mr. Paradise, and Ms. Alford via email correspondence, text messages, and recorded phone calls.

21. On March 13, 2019, BSS discussed the security breach and unauthorized access of the Trade Secrets with Mr. Torreso and requested confirmation that the Trade Secrets and proprietary information were protected and that any unauthorized copies would be returned to BSS or destroyed.

22. On March 13, 2019, BSS requested an affidavit from Defendants to admit under oath that they did not have any authority to download the Trade Secrets; that the Trade Secrets had been returned to BSS and further deleted from any and all servers; that there are no copies, derivatives or any versions of the Trade Secrets in their possession, custody or control; and that they will not take any further action, directly or indirectly, to access, copy, or remove the Trade Secrets.

23. On March 14, 2019, BSS was notified that Defendants would not sign such affidavit or other written confirmation that the Trade Secrets were secure or that any unauthorized copies had been returned or destroyed.

24. At that point, BSS notified Mr. Paradise and AI Trades that further development of the Trade Secrets was postponed until the unauthorized access of the Trade Secrets and related issues were resolved.

25. On March 15, 2019, BSS sent an email to Defendants seeking written assurance that the Trade Secrets and proprietary information were secure and that any unauthorized copies had been returned or destroyed. Defendants ignored this email and BSS received no response.

26. Over the next few days, BSS continued daily to reach out to seek assurance from Defendants that the Trade Secrets were secure but Defendants continue to ignore demands and requests from BSS.

27. To date, no Defendant has provided any assurance that the Trade Secrets are secure or that any copies of the Trades Secrets have been returned to BSS or destroyed.

28. On March 11, 2019, BSS provided its final invoice for monthly license fees and software customization and demanded full payment from AI Trades.

29. Despite demand, AI trades has not paid BSS the total amount outstanding of 2.268493150685 BTC ($8,280 USD).

**FIRST CAUSE OF ACTION**
**Violation of Defense of Trade Secret Act, 18 U.S.C. §§ 1836-1839** *et seq.*
**(Against All Defendants)**

30. BSS incorporates all of the above paragraphs as though fully set forth herein.

31. BSS owns and possesses certain confidential and proprietary Trade Secrets as alleged above.

32. The confidential and proprietary Trade Secrets relate to goods and services used by BSS in interstate and foreign commerce.

33. BSS has taken reasonable measures to keep its Trade Secrets confidential and secret, including but not limited to requiring AI Trades to sign a confidentiality agreement regarding the Trade Secrets.

34. Due to the efforts to keep the Trade Secrets confidential, this information is not available for others to reproduce the same.

35. The Trade Secrets derive economic value to BSS from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from disclosure or use of the information, which is estimated to be more than $5 million.

36. In violation of BSS' rights, Defendants misappropriated the confidential and proprietary Trade Secrets in an improper and unlawful manner as alleged herein. Defendants' misappropriation of confidential and proprietary Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive. Defendants have attempted to and continue to attempt to conceal their misappropriation.

37. On information and belief, if Defendants are not enjoined, Defendants will continue to misappropriate and use the Trade Secrets for their own benefit and to BSS' detriment, which exceeds $5 million.

38. As a direct and proximate result of Defendants' conduct, BSS has suffered and, if Defendants' conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial but not less than $5 million. Because the remedy at law is inadequate, BSS seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary,

and trade secret information and to protect other legitimate business interests. BSS operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

39. BSS has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorney's fees and costs in total amount not less than $5 million.

## SECOND CAUSE OF ACTION
### Utah Trade Secret Act, U.C.A. § 13-24-1, et seq.
### (Against All Defendants)

40. BSS incorporates all of the above paragraphs as though fully set forth herein.

41. Defendants wrongfully misappropriated Plaintiff's Trade Secrets as defined above.

42. The Trade Secrets are not generally known or reasonably ascertainable to Defendants by proper means.

43. Plaintiff has taken reasonable measures to keep its Trade Secrets confidential and secret, including but not limited to requiring AI Trades to sign a confidentiality agreement regarding the Trade Secrets.

44. Defendants knew or had reason to know that the Trade Secret was acquired by improper means.

45. Defendants knew or had reason to know that disclosure of the Trade Secret was done without authorization from BSS.

46. BSS should be entitled to both injunctive relief and damages as allowed by U.C.A. §§ 13-24-3 and 4, which damages are not less than $5 million.

47. Defendants' misappropriation was willful and malicious thereby entitling BSS to an award of exemplary damages pursuant to U.C.A. § 13-24-5.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (Against AI Trades)

48. Connectware and AI Trades entered into a valid and binding written Software Agreement.

49. Connectware performed all of its obligations required under the Software Agreement.

50. AI Trades breached the terms of the Software Agreement by failing to pay the amounts owed to Connectware in the total amount outstanding of 17.430680010471 BTC ($69,250 USD).

51. Despite demand, AI Trades has not cured this breach of the Software Agreement.

52. BSS and AI Trades entered into a valid and binding written White Label Agreement.

53. BSS performed all of its obligations required under the White Label Agreement.

54. AI Trades breached the terms of the White Label Agreement by failing to pay the amounts owed to BSS in the total amount outstanding of 2.268493150685 BTC ($8,280 USD).

55. Despite demand, AI Trades has not cured this breach of the White Label Agreement.

56. Connectware and BSS request attorneys' fees and court costs to be paid by AI Trades, which remedy is available under their respective Software Agreement and White Label Agreement.

### FOURTH CAUSE OF ACTION
### Conversion
### (Against All Defendants)

57. BSS incorporates all above paragraphs as though fully set forth herein.

58. BSS owns the right to the Trade Secrets.

59. Defendants intentionally downloaded and converted the Trade Secrets without authority from BSS, and Defendants are using the Trade Secrets for their personal and business benefit.

60. Despite multiple written demands from BSS to return, destroy, and attest that Defendants do not have the Trade Secrets in their possession, custody or control, Defendants have refused to respond to BSS.

61. Due to Defendants' intentional conversion of the Trade Secrets, BSS has been damaged in an amount to be determined at trial, but not less than $5 million.

### FIFTH CAUSE OF ACTION
### Defamation
### (Against Joff Paradise and AI Trades)

62. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

63. Mr. Paradise and AI Trades have engaged in defamatory conduct by publishing false statements and misrepresentations to several of Plaintiffs' customers and business relationships.

64. The statements made by Mr. Paradise and AI Trades are false and made to harm Plaintiffs and its owners, agents, and representatives.

65. The false statements made are not subject to any type of privilege as they were not made in a specific judicial proceeding.

66. Mr. Paradise and AI Trades published the statements with the intent to harm Plaintiffs.

67. Plaintiffs have been damaged by the actions of Mr. Paradise and AI Trades and they should be prohibited from making such defamatory statements to any other individual or entity.

### SIXTH CAUSE OF ACTION
### Slander Per Se
### (Against Joff Paradise and AI Trades)

68. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

69. Mr. Paradise and AI Trades have made false statements to other businesses, colleagues and third parties that Plaintiffs and its owners, agents, and employees have engaged in criminal conduct and engaged in unlawful business practices.

70. These statements were published to the public domain.

71. Such statements are untrue and have been stated in a willful and malicious manner to harm Plaintffs' reputation in the business community and otherwise.

72. The statements have harmed Plaintiffs in an amount to be determined at trial.

### PRAYER FOR RELIEF

1. Judgment in favor of Plaintiffs and against Defendants on all causes of action alleged herein;

2. For damages in an amount to be proven at trial, which are not less than $5 million, including treble damages where available;

3. For preliminary and permanent injunctive relief against Defendants;

4. For judgment that this is an exceptional case;

5. For punitive damages;

6. For restitution;

7. For costs of suit incurred herein;

8. For exemplary damages;

9. For prejudgment interest;

10. For attorneys' fees and costs; and

11. For such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

Dated this 10th day of April, 2019.

PIA ANDERSON MOSS HOYT, LLC

/s/ Jared W. Moss
Jared W. Moss
Attorney for Plaintiffs